David E. Lemke, Esq. (pro *hac vice*)
Tennessee Bar No. 13586
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
P.O. Box 198966
Nashville, Tennessee 37219
615/850-8655 (Telephone)
615/244-6804 (Facsimile)
ATTORNEYS FOR NORTHSTAR HOSPITAL, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Lubbock, Texas - Highland Medical Center, L.P., | § | Case No. 08-50202-rlj 11 |
| | § | Chapter 11 Proceeding |
| Debtor. | § | |

**NORTHSTAR HOSPITAL, LLC'S MOTION TO ALTER OR AMEND ORDER VACATING ORDER APPROVING DEBTOR'S EMERGENCY MOTION TO INCUR UP TO $150,000 IN DEBT WITH ADMINISTRATIVE EXPENSE PRIORITY**

TO THE HONORABLE ROBERT L. JONES, Bankruptcy Judge:

Northstar Hospital, LLC ("Northstar"), a creditor and party-in-interest in the above-styled case, hereby moves this Court to alter or amend its Order entered on August 8, 2008, vacating its prior Order authorizing Debtor to borrow up to $150,000. In support of this Motion, Northstar states as follows:

**I.
JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of the bankruptcy case; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(D), and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105 and 364 and Bankruptcy Rules 9023 and 6004.

2210249.1

## II.
## SUMMARY

2. This Court entered an Order on August 8, 2008 (the "August 8 Order"), vacating its Order entered on August 1, 2008 (the "DIP Financing Order") pursuant to which Northstar loaned $75,000.00 (the "Loan") to Debtor. In its August 8 Order, the Court found that Northstar did not make the Loan in good faith. Accordingly, Northstar did not receive the benefits of the terms of the DIP Financing Order.

3. Northstar contends that it did, in fact, make the Loan in good faith and, therefore, should be entitled to the terms of the DIP Financing Order. At the very least, Northstar believes that the Loan should be granted administrative expense priority and the best available lien on Debtor's assets.

## III.
## BACKGROUND

**A. Procedural Posture and General Background**

4. Lubbock, Texas - Highland Medical Center, L.P. ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on May 31, 2008, and is currently operating as a debtor in possession.

5. The Debtor owns and operates Highland Medical Center, a medium-sized community hospital located at 2412 50th Street, Lubbock, Texas 79412 (the "Facility"). The Facility is a 126-bed acute care general hospital that serves the greater south west Lubbock county with 5 operating rooms, 7 ICU beds, and a 6 bed level 4 trauma center.

6. Prior to and since the petition date, Debtor has struggled financially, and on more than one occasion has come close to having to close its doors due to a lack of funds to pay operating expenses, including payroll.

7. By the end of July, Debtor was faced with faced with yet another of these financial crises: it needed at least $75,000.00 by August 1 to make payroll so that it could keeps its doors open. Debtor filed a motion seeking authority to borrow up to $150,000, and at a hearing on July 31, 2008, this Court approved that request; however, the party who had indicated a willingness to loan the money backed out prior to the July 31 hearing. Therefore, even though Debtor had the authority to borrow the money, it did not have a funding source willing to make the loan. If Debtor did not receive at least $75,000 by August 1 to make payroll, Debtor was going to have to close its doors.

8. Because of prior communications from Northstar, including a prior offer that Northstar made around the first of June, Debtor knew Northstar was interested in purchasing the Debtor's assets. Therefore, after the hearing on July 31[1], Debtor approached Northstar and asked Northstar to loan at least $75,000 immediately to Debtor (i.e., by the next day), with the understanding Debtor would immediately thereafter request authority to sell its assets to Northstar, subject to higher and better bids, on terms and conditions acceptable to Northstar and approved by this Court.

9. Sometime after 5:00 p.m. on July 31, representatives of Northstar, including its undersigned counsel, participated in a call with counsel for Debtor who advised that this Court had authorized Debtor to borrow up to $150,000, but that he (i.e., Counsel for Debtor) had to submit an order to the Court first thing in the morning), and that Debtor would need $75,000 immediately upon the Court entering the Order or else Debtor would have to immediately close its doors. Accordingly, Northstar was advised it would have to decide that evening whether it would loan the $75,000.

---

[1] Neither Northstar nor its counsel were present at the July 31 hearing, nor had they taken part in any discussions with Debtor, Debtor's counsel, or any other party regarding the financing motion or any of the proceedings or discussions leading up to the hearing.

2210249.1

10. During the call on the evening of July 31, Northstar advised Debtor's counsel that it would consider making the Loan, in light of Debtor's intention to promptly seek authority to sell substantially all its assets to Northstar, subject to higher and better bids. However, Northstar was clear with counsel that it would do so only if the Court approved an order which stated, among other things, that if Northstar were the purchaser of the assets, Northstar could credit the amount it was owed under the Loan against the purchase price, and that if Northstar were outbid at auction, all amounts due and owing to Northstar would be paid first at closing from the proceeds of such sale.

11. Following the call, counsel for Debtor provided counsel for Northstar with a draft of the proposed order authorizing Debtor to borrow up to $150,000. Debtor's counsel was careful to explain that the IRS had originally objected to the motion and that the proposed order now contained terms acceptable to the IRS. Therefore, Debtor had to be careful about making any changes to the order that might materially adversely effect the protections granted to the IRS in the proposed order. Counsel for Northstar reviewed the proposed Order and at approximately 9:20 p.m. Central Time emailed counsel for Debtor a revised draft of the order with changes tracked via "redlining." One of the changes was to add the following paragraphs:

    a. Northstar will immediately loan to the debtor the sum of $75,000.00 ("Loan No. 1"). The interest rate on Loan No. 1 shall be 8.0%, with repayment of principal and interest thereon due and payable on the earlier of thirty (30) days from the date of funding or the sale of substantially all of the Debtor's assets. Upon the sale of substantially all of the Debtor's assets, all amounts due and owing to Northstar under Loan No. 1 shall be paid first at closing from the proceeds of such sale. If Northstar is the purchaser of the assets, Northstar may credit the amount it is owed from Loan No. 1 against the purchase price.

    b. Debtor and Northstar are currently negotiating the terms of the sale of substantially all of Debtor's assets to Northstar, subject to higher and better bids. In the event the Court approves bidding procedures for such sale on terms acceptable to Northstar, Northstar has agreed to loan to Debtor an additional $75,000.00 ("Loan No. 2"). The interest rate on Loan No. 2 shall be 8.0%, with repayment of principal and

interest thereon due and payable on the earlier of thirty (30) days from the date of funding or the sale of substantially all of the Debtor's assets. Upon the sale of substantially all of the Debtor's assets, all amounts due and owing to Northstar under Loan No. 2 shall be paid first at closing from the proceeds of such sale. If Northstar is the purchaser of the assets, Northstar may credit the amount it is owed from Loan No. 2 against the purchase price.

After a couple of email exchanges between counsel for Debtor and counsel for Northstar, as well as one or more exchanged voice mail messages, the parties agreed to the form of the DIP Financing Order that was ultimately submitted to the Court and entered on August 1, 2008; and that Order contained the above referenced language.

12. Northstar is informed and believes that on the morning of August 1, counsel for Debtor submitted the DIP Financing Order to the Court. Some time later that morning or early that afternoon on August 1, 2008, Northstar was advised that the DIP Financing Order had been entered, and Northstar immediately wired the Loan to Debtor's account to cover payroll and payroll taxes.

13. On Friday afternoon, counsel for Northstar learned that the IRS objected to the above referenced provisions of the DIP Financing Order. However, at that point in time, the Loan had already been funded and the funds had already been used to cover payroll.

### IV.
### ARGUMENT

14. At the time Northstar extended the Loan to Debtor, Northstar believed, in good faith, that Debtor had the requisite authority to borrow the funds from Northstar in accordance with the terms of the DIP Financing Order. Certainly, Northstar had negotiated the terms of the DIP Financing Order in good faith with Debtor, and had made it clear from the outset, both orally and in writing, that it would only loan funds based on those conditions. Therefore, when

2210249.1

Debtor accepted those conditions and proposed them to the Court, Northstar assumed there was no issue with the changes; this assumption was confirmed once Northstar was advised that the Order had been entered.

15. Moreover, it was Northstar's belief that the DIP Financing Order, even with the above referenced provisions, did not materially adversely effect the protections granted the IRS. The DIP Financing Order contained all of the other provisions that were contained in the order originally proposed by Debtor's counsel. Therefore, except for the addition of the above referenced provisions, it contained whatever language the IRS had accepted earlier in the day. So, unless there was a sale of substantially all of the assets to Northstar for $4.1 million or more, the Loan would receive the exact same treatment as agreed to by the IRS.

16. Northstar believes it is important to note that at the time of the hearing and the IRS's objections, there was no sale contemplated. Debtor was merely seeking authority to borrow up to $150,000 with no prospects for a sale. Thus, the IRS's objection to Debtor's request to borrow funds was in the context of having its tax lien potentially primed with no real prospect for the priming loan to actually enhance the estate. Northstar's Loan, however, contemplated a sale to Northstar for $4.1 million or more, and only if that occurred would Northstar's Loan be paid from the purchase price. In all other instances, Northstar's Loan would receive the treatment to which the IRS had expressly agreed. Therefore, Northstar genuinely believed that the Loan could not possibly adversely effect the IRS's lien position, since it would only be paid back first if it resulted in Northstar enhancing the value of the estate by at least that much or more as a result of bringing about a sale of the assets.

17. Northstar is not suggesting that it was in any way mislead by Debtor or Debtor's counsel. It appears now that there was a genuine misunderstanding about what Northstar

intended by the insertion of the above reference language. However, Northstar is stating in no uncertain terms that it made the Loan on the good faith belief that the terms of the DIP Financing Order had been presented properly to the Court, and that the terms were not objectionable to the Court or any parties in interest at the time the Loan was funded.

## V.
## RELIEF REQUESTED

18. For the reasons stated above, Northstar respectfully requests that this Court alter and amend the August 8 Order and reinstate the terms of the DIP Financing Order in its entirety. In the alternative, Northstar respectfully requests that this Court reinstate the DIP Financing Order, but for the terms referenced above.

WHEREFORE, Northstar Hospital, LLC prays that the Court enter an order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Date: August 18, 2008　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ David E. Lemke
　　　　　　　　　　　　　　　　　　David E. Lemke, Esq. (*pro hac vice* granted)
　　　　　　　　　　　　　　　　　　(TN Bar No. 13586)
　　　　　　　　　　　　　　　　　　**WALLER LANSDEN DORTCH & DAVIS, LLP**
　　　　　　　　　　　　　　　　　　511 Union Street, Suite 2700
　　　　　　　　　　　　　　　　　　P.O. Box 198966
　　　　　　　　　　　　　　　　　　Nashville, Tennessee 37219
　　　　　　　　　　　　　　　　　　Telephone: (615) 850-8655
　　　　　　　　　　　　　　　　　　Facsimile: (615) 244-6804
　　　　　　　　　　　　　　　　　　E-mail:　　dlemke@wallerlaw.com

　　　　　　　　　　　　　　　　　　Attorneys for NorthStar Hospital, LLC

## CERTIFICATE OF SERVICE

      I, David E. Lemke, do hereby certify that a true and correct copy of the foregoing Motion was served by court enabled electronic service on August 18, 2008, upon the following listed parties:

1.     Max R. Tarbox
   McWhorter, Cobb & Johnson, LLP
   1722 Broadway
   Lubbock, Texas 79401

2.     U.S. Trustee
   1100 Commerce Street
   Room 976
   Dallas, TX 75242-1496

3.     All parties in interest registered with the
   U. S. Bankruptcy Court to receive electronic notices in this case.

                  /s/ David E. Lemke
                  David E. Lemke