

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed September 11, 2008            United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Lubbock, Texas - Highland Medical Center, L.P., | § | Case No. 08-50202-rlj11 |
| | § | Chapter 11 Proceeding |
| Debtor. | § | |

**ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTION 363(b) AND (f)**

This matter came before the Court on September 4, 2008, on Debtor's Motion to Sell Debtor's Assets Free and Clear of Liens, Claims and Encumbrances Pursuant To 11 U.S.C. Section 363 (b) and (f) (the "Sale Motion") and all objections filed thereto. This Court, having reviewed the pleadings, including the Sale Motion and all objections, having considered any evidence presented, having considered the statements of counsel in open court, and being fully advised in the premises, finds as follows:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 1334 and 157, and this matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2).

2. Proper notice of this hearing and the relief requested by Debtor was given to all parties entitled to notice.

3. On August 15, 2008, this Court entered its Order (A) Authorizing And Scheduling Sale Of Debtor's Assets Free And Clear Of All Liens, Claims, And Encumbrances With All Liens Claims And Encumbrances To Attach To The Proceeds, (B) Approving Bid Procedures (the "Bid Procedures Order"). [docket no. 151].

4. The Assets being sold are all of Debtor's right, title and interest in all assets that are used or useable in connection with the business of Highland Medical, including all tangible and intangible personal property, real estate and improvements titled in Debtor, and (to the extent assignable), all licenses, permits, and Medicare and Medicaid provider agreements and numbers, but excluding Debtor's accounts receivable, cash, cash equivalents, and any causes of action arising under the United States Bankruptcy Code. The real estate and improvements to be sold are limited to that property titled in the name of the Debtor.

5. Unless otherwise indicated, all capitalized terms in this Order shall have the same meaning as given them in the Bid Procedures Order. The Bid Procedures Order set forth, among other things, the procedures and requirements for any interested bidder to submit a qualified bid, including payment of an earnest money deposit of $50,000.

6. The following two parties submitted timely, qualified bids in accordance with the Bid Procedures Order: Lubbock Heritage Hospital, Inc. ("Heritage") and Northstar Hospital, LLC ("Northstar"). A true and correct copy of Heritage's qualified bid is attached hereto as Exhibit A (the "Heritage Bid"), and a true and correct copy of Northstar's qualified bid is attached hereto as Exhibit B (the "Northstar Bid"). Accordingly, Heritage and Northstar are "Qualified Bidders" for purposes of the Bid Procedures Order. No other parties submitted bids or qualified as "Qualified Bidders." Hereinafter,

the term "Buyer" will apply to Heritage or Northstar, as the context in which the term is used dictates. No other parties had tendered a timely bid.

7. Pursuant to the Bid Procedures Order, Debtor's counsel conducted an auction on September 3, 2008, at his offices. The auction was conducted properly and in accordance with the Bid Procedures Order.

8. The Heritage Bid in the amount of $3,000,001.00, was the starting bid, inasmuch as it was the highest bid received prior to the commencement of the auction. The Northstar Bid totaled $3,000,000.00, subject to certain terms set forth in a purchase agreement attached to its Bid. Northstar declined to increase the Northstar Bid at the auction. Accordingly, the Heritage Bid was the highest and best bid received by Debtor and the Northstar Bid was the next highest and best bid received by the Debtor.

9. Both Heritage and Northstar are hereby deemed to be " good faith" purchasers for purposes of 11 U.S.C. Section 363(m).

IT IS THEREFORE ORDER, ADJUDGED AND DECREED AS FOLLOWS:

(A) The Heritage Bid shall be and hereby is deemed to be the highest and best bid for the Assets. Accordingly, Debtor shall be and hereby is authorized to sell the Assets to Heritage, as the successful bidder, in accordance with the terms and conditions of the Heritage Bid, 11 U.S.C. Section 363(b) and (f), and this Order.

(B) The Northstar Bid shall be and hereby is deemed to be the next highest and best bid for the Assets. Accordingly, in the event Heritage fails to close on the purchase of the Assets in accordance with this Order, Heritage shall forfeit its earnest money deposit and Debtor shall be and hereby is authorized to sell the Assets (as defined in the Northstar Bid) to Northstar, as the next highest bidder, in accordance with the terms and conditions of the Northstar Bid, 11 U.S.C. Section 363(b) and (f), and this Order.

(C) The sale of the Assets, whether to Heritage or Northstar, shall be and hereby is approved free and clear of all liens, claims and encumbrances, and all valid liens, claims and encumbrances, if any, shall attach to the proceeds of sale of the subject property in order of priority, subject to all allowed administrative expenses and claims consisting of sale costs, legal fees and expenses associated with the sale of the Assets, except for such liens, claims, encumbrances or interests expressly assumed or approved in the Heritage Bid or the Northstar Bid, whichever is applicable; this means the Buyer shall have no successor liability for any claims accruing against Debtor prior to the closing date, except that the Buyer will assume and be liable for the Medicare overcharge/overpayment liability of the Debtor for 2006, 2007, and 2008 to Closing date.

(D) The sale shall be deemed to be accomplished in accordance with 11 U.S.C. Section 1146(a) so that the transfer of the Assets to the Buyer shall not be subject to any transfer taxes to the fullest extent permitted by law, and all instruments of conveyance of title to the Assets shall so state.

(E) The closing of the sale to Heritage shall take place on or before September 15, 2008 unless Heritage receives an extension from the Court prior to that date. The only basis for an extension of the closing that the Court will consider is if Heritage has been unable to effect, after diligent effort, a transfer to Heritage of the Debtor's hospital license to operate a medical facility from the Texas Department of State Health Services.

(F) In the event Heritage fails to close by September 15 or such later date as the Court so orders, the closing of the sale to Northstar shall occur in accordance with the terms of the Northstar Bid, but no sooner than 15 days following Northstar's receipt of written notice from Debtor that Heritage has failed to close; provided, however, Northstar may seek an extension of the closing date beyond such 15-day period if Northstar has been unable to effect, after diligent effort, written confirmation from the Texas Department of State Health Services as to hospital licensure matters and reasonable confirmation from all other applicable government authorities whose approval is required that, at closing, all licenses, certificates of need, certificates of exemption, franchises, accreditations and registrations, permits, approvals, consents and all other items required by law to operate each component of the Assets as currently operated will be transferred to, or reissued in the name of, the Buyer. In addition, Northstar may automatically extend the closing date up to another 15 days from the original closing date by providing Debtor written notice of such election at any time. If Northstar elects automatically to extend the closing date as provided above, Northstar will immediately loan Debtor such amounts as Debtor reasonably needs in order to pay its operating expenses during such extension, up to, but not to exceed, the sum of $75,000.00 (the "Closing Extension Loan"). The interest rate on the Closing Extension loan

shall be 8.0%, with repayment of principal and interest thereon due and payable on the earlier of thirty (30) days from the date of funding or the sale of substantially all of the Debtor's assets. The Closing Extension Loan will be made pursuant to 11 U.S.C. §364 (c) (1) and (3), meaning Northstar shall be entitled to an administrative claim in the amount of the Closing Extension Loan, plus interest; provided, however, such administrative claim shall be subordinate to any administrative expenses provided for in 11 U.S.C. §503(b)(1)-(9). Northstar's administrative claims shall also be subordinate to all allowed prior liens on the Debtor's Assets. Finally, in order to further secure the Closing Extension Loan, Northstar shall be granted the best lien available on all of the Debtor's Assets, including the Debtor's real property and personal property, including Debtor's accounts receivable, subject to all allowed prior liens; provided, however, Northstar's lien granted herein shall have priority over the liens of the United States Government as to the Debtor's personal property, other than receivables from Medicare, but not as to the Debtor's real property. At the conclusion of such automatic extension period elected by Northstar, Northstar shall immediately close on the sale, unless Northstar has sought and been granted an extension of the closing date beyond such automatic extension period because Northstar has been unable to effect, after diligent effort, written confirmation from the Texas Department of State Health Services as to hospital licensure matters and reasonable confirmation from all other applicable government authorities whose approval is required that, at closing, all licenses, certificates of need, certificates of exemption, franchises, accreditations and registrations, permits, approvals, consents and all other items required by law to operate each component of the Assets as currently operated will be transferred to, or reissued in the name of, the Buyer.

(G)     It is further ORDERED that nothing in this order determines or establishes the extent, priority and/or validity of any lien or liens asserted against debtor's accounts receivable or other property, or establishes, for claim or lien determination purposes, the value of this purchase.

(H)     It is further ORDERED that:

(1)     Notwithstanding anything contained herein to the contrary, nothing herein shall affect the rights of Texas Department of State Health Services and Texas Health & Human Services Commission from exercising their rights of recoupment, but the debtor shall retain its right to exhaust administrative remedies to contest the dollar amount of any recoupment(s) effectuated or to contest said amounts before this Court, if this Court has jurisdiction thereof.

(2)     Texas Department of State Health Services and Texas Health & Human Services Commission reserve the right to contest the exercise of this court's jurisdiction over any disputed

recoupment amount and to argue in favor of having such matter(s) heard before the administrative tribunal(s) that regularly adjudicate such issues.

(3)     By purchasing these assets, Heritage expressly warrants and represents that it is authorized or in the process of becoming authorized by having made application with the appropriate agencies under applicable state and federal law to acquire any pharmaceuticals, medical devices and/or radiation equipment being sold

(4)     Notwithstanding anything to the contrary in the purchase or sale agreement or this Order Approving Sale under 11 U.S.C. § 363, nothing in this Order or the purchase or sale agreement (i) releases or nullifies any liability Heritage has to the Texas Department of State Health Services (DSHS) or other state or federal agency under statutes or regulations to which that entity would be subject as the owner or operator of the property after the date of closing, just as if this sale had taken place outside bankruptcy [by way of example but not limitation, compliance with 25 TAC 289.226(n) regarding the duty to notify DSHS of the sale/transfer of any radiation machines] or (ii) impairs or restricts DSHS's ability to pursue all of its rights and remedies in state court against the Buyer after the date of closing.

(5)     Notwithstanding anything contained herein to the contrary, nothing herein shall affect the rights of the United States Department of Health and Human Services ("HHS") from exercising its rights of setoff and/or recoupment, but the Debtor shall retain its right to exhaust administrative remedies to contest the dollar amount of any setoff and/or recoupment effectuated or to contest amounts before this Court, if this Court has jurisdiction thereof. It is further Ordered that the United States Department of Health and Human Services reserves the right to contest the exercise of this Court's jurisdiction over any disputed setoff and/or recoupment amount and to argue in favor of having such matter(s) heard before the administrative tribunal(s) that regularly adjudicate such issues.

(6)     The Buyer, whether Heritage or Northstar, will, notwithstanding any term or order herein, assume and be liable to the HHS for the Medicare overcharge/overpayment liability of the Debtor for the years 2006, 2007, and 2008 to sale closing date, and, further, the Buyer agrees to repay such in terms acceptable to HHS.

(7)     The Buyer shall adopt either the Debtor's privacy policies which are currently in place or shall adopt alternative privacy policies that fully provide better protection under state and federal statutes, including but not limited to HIPAA (Health Insurance Portability and Accountability Act), to protect personally identifiable information, as that term is defined in 11 U.S.C. § 101(41A).

(8)     The Buyer shall assume custody and control of patient records, as that term is defined at 11 U.S.C. § 101(40B) and shall maintain them in compliance with state and federal laws and regulations

including, but not limited to regulations promulgated pursuant to HIPAA (Health Insurance Portability and Accountability Act).

(9) The Buyer shall allow the Debtor or its successor reasonable access to such patient records for billings, audits and as necessary to enable the Debtor to investigate or defend claims.

(10) Upon closing, the buyer shall be responsible for caring for patients of the Debtor.

(11) Lubbock Central Appraisal District's statutory liens for outstanding ad valorem real and personal property taxes on any of the Assets sold pursuant to this order for the 2007 tax year and all pro-rated periods of 2008 through the Closing Date will attach to the sale proceeds and be paid in full at Closing, with the Buyer being responsible solely for taxes relating to all pro-rated periods of 2008 after Closing. The Lubbock Central Appraisal District will retain its statutory lien on the Assets solely for that amount of the 2008 taxes pro rated after the Closing.

### END OF ORDER ##

Approved:


  /s/ Max R. Tarbox
Max R. Tarbox
McWhorter, Cobb & Johnson, LLP
Lubbock, Texas
Attorneys for the Debtor



  /s/ Nolan Greak
Nolan Greak
Attorney at Law
Lubbock, Texas
Attorneys for NS Fund I, LLC



  /s/ Kent Hale
Kent Hale
Craig, Terrill & Hale, L.L.P.
Lubbock, Texas
Attorneys for Dos Pansoncitos

  /s/ Craig L. Caesar
Craig L. Caesar
McGlinchey Stafford, PLLC
Dallas, Texas
Attorneys for CHS/Community Health Systems


  /s/ James W. Brewer
James W. Brewer
Kemp Smith LLP
El Paso, Texas
Attorneys for Tenet Health system Hospitals, Inc.


  /s/ Andrew L. Sobotka
Andrew L. Sobotka
Trial Attorney
United States Dept. of Justice
Tax Division
Dallas, Texas
Attorneys for Internal Revenue Service


  /s/ Howard A. Borg
Howard A. Borg
Asst. U.S. Attorney
United States Dept. of Justice
Attorneys for the Department of Health and Human Services


  /s/ David E. Lemke
David E. Lemke
Waller Lansden Dortch & Davis, LLP
Nashville, Tennessee
Attorneys for Northstar Hospital, LLC


  /s/ Wayne Collins
Wayne Collins
Dimmit, Texas
President of Lubbock Heritage Hospital, Inc.

/s/ Carol E. Jendrzey
Carol E. Jendrzey
Cox Smith Matthews Incorporated
San Antonio, Texas
Patient Care Ombudsman