IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND MEDICAL CENTER, L.P. | § | CASE NO. 08-50202-11 |
| dba HIGHLAND COMMUNITY | § | Chapter 11 |
| HOSPITAL dba HIGHLAND | § | |
| MEDICAL CENTER | § | |
| | § | |
| Debtor | § | |

FILED
SEP 22 2008
TAWANA C. MARSHALL, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

### FIRST INSURANCE FUNDING CORP.'S MOTION FOR RELIEF FROM AUTOMATIC STAY

*************************************************************************

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST TWO (2) DAYS BEFORE THE HEARING. IF YOU FILE YOUR RESPONSE LESS THAN FIVE (5) DAYS BEFORE THE HEARING, YOU MUST SEND A COPY TO THE MOVANT BY FACSIMILE, BY HAND OR BY ELECTRONIC DELIVERY. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MATTER ON **WEDNESDAY, OCTOBER 15, 2008, AT 1:30 P.M. IN COURTROOM 314,** IN THE UNITED STATES BANKRUPTCY COURT, 1205 TEXAS AVE., LUBBOCK, TEXAS.

*************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

First Insurance Funding Corporation ("Movant"), by its counsel, White Shaver, P.C., pursuant to 11 U.S.C. Section 361, 11 U.S.C. Section 363, 28 U.S.C. Section 157(b), 28 U.S.C. Section 1334 and Bankruptcy Rules 4001 and 9014, files this motion for relief from the automatic stay complaining of Highland Medical Center, L.P. d/b/a Highland Community Hospital d/b/a Highland Medical Center ("Respondent"), and in support of its motion, Movant would respectfully show the court the following:

1. The Respondent filed the voluntary petition under Chapter 11 of the United States Bankruptcy Code on or about May 31, 2008.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and section 157(b)(2)(g) and has authority to grant the relief pursuant to 11 U.S.C. Section 362.

3. In the ordinary course of Respondent's business, the Respondent was required to maintain insurance policies, including general liability and property damage.

4. Movant is an Illinois corporation engaged in the business of financing insurance premiums. Movant financed certain insurance policies of Respondent (collectively the "Financed Insurance").

5. On or about April 7, 2008, Movant and Respondent entered into a Commercial Premium Finance Agreement and Disclosure Statement (the "Finance Agreement") pursuant to which Movant paid a total of $232,444.25 for the purchase of the Financed Insurance. Respondent paid Lone Star Advantage Insurance Services a down payment of $23,931.70. A copy of the Finance Agreement is attached hereto as Exhibit 1 and incorporated for all purposes.

6. Respondent is in default of its payment obligations to Movant for the Financed Insurance under the Finance Agreement by not making payment to Movant for the payments due on July 28, 2008 and August 29, 2008, respectively.

7. The Finance Agreement includes a security agreement granting Movant a security interest in the gross unearned premiums which would be payable in the event of cancellation of the insurance policy and which further appoints Movant as its attorney-in-fact to cancel the insurance policy, to receive any unearned or returned premiums and to direct the insurance companies to make the checks or drafts payable to Movant.

8. Movant is therefore a secured creditor of Respondent and asserts that it is not required to perfect the validity of the parties' Finance Agreement as a secured transaction as against

creditors, subsequent purchasers, pledges, encumbrances, trustees in bankruptcy or their successors or assigns.

9. If Respondent had not filed bankruptcy, Movant would be entitled to declare the Finance Agreement in default and would immediately collect, pursuant to its security interest, as of the May 31, 2008 filing date, approximately $212,124.74 in return premiums. This amount represents the unused portion of the Financed Insurance. Each day that goes by, Movant's secured collateral is deteriorating at a daily rate of approximately $720.40 per day.

10. As of September 22, 2008, the total amount owed on the Finance Agreements was $167,521.80, plus late charges, attorney's fees and costs.

11. As a secured creditor, Movant holds a security interest in the unused portion of the insurance premiums addressed above.

12. Non-payment of the Finance Agreement is critical and causes irreparable harm to Movant because Movant's collateral, being the unused portion of insurance premiums placed with insurance companies, deteriorates on a daily basis. Specifically, for every day of non-payment, Movant loses approximately $720.40 representing the daily use of insurance by Respondent. Therefore, Movant is currently being irreparably harmed by the continuation of the Automatic Stay.

13. Because Respondent cannot maintain its insurance, Movant should be permitted to cancel the financed insurance and collect the unused portion of the insurance premiums.

14. Movant's interest in the insurance premiums is not adequately protected, and Movant has been, and continues to be, irreparably harmed by the Automatic Stay, which prevents Movant from enforcing its rights as a Secured Creditor and demanding the insurance premiums be returned to it by the respective insurance companies.

15. Cause exists to terminate the Automatic Stay pursuant to 11 U.S.C. Section 362, to permit Movant to cancel the insurance and collect the unused insurance premiums.

WHEREFORE, premises considered, movant respectfully requests:

16. The automatic stay provided for by 11 U.S.C. Section 362 be terminated as to Movant to allow Movant to demand the insurance premium deposits pursuant to the terms and conditions of its contracts with the Respondent and proceed to collect all collateral it has in order to protect its financing contracts.

17. In the alternative Movant would request that the court provide Movant with adequate protection.

> Respectfully submitted,
> **WHITE SHAVER**
> 205 W. Locust
> Tyler, Texas 75702
> (903) 533-9447 Telephone
> ( 903/595-3766 Telefax
>
> /s/ Clay M. White
> CLAY M. WHITE
> State Bar No. 21292220
> T. HEATH CHAMNESS
> State Bar No. 24040667
> T. GLENN INGRAM
> State Bar No. 24007423
> ATTORNEYS FOR FIF

## CERTIFICATE OF SERVICE

On September 22, 2008, I hereby certify that a true and correct copy of the foregoing Notice of Appearance Under Bankruptcy rule 9010(b), combined with Request for Notices Pursuant to Bankruptcy Rule 2002(a) and (b) and Pleadings Pursuant to Bankruptcy Rule 3016 and 3017(a) has been served via electronic mail and/or by first class regular mail, postage prepaid to the following persons listed on Exhibit A attached hereto.

T. Heath Chamness
T. Glenn Ingram

# First Insurance Funding Corp.

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**

Quote Number: 00000572515

**INSURED/BORROWER** (Name and address as shown on Policy)
Lubbock Texas-Highland Medical Center, LP
Highland Community Hospital
2412 50th Street

Lubbock    TX    79412

Telephone Number: (806) 788-4100
Direct Correspondence to: Chuck Putner

**AGENT or BROKER** (Name and Business Address)    06249-0001
Lone Star Advantage Insurance Services

4646 FM 1960 W.

Houston    TX    77069

Telephone Number: (281) 444-4212

F/D: 000

| | | | |
|---|---|---|---|
| A | Total Premium | $ | 256,375.93 |
| B | Cash Down Payment Required | $ | 23,931.70 |
| C | Unpaid Premium Balance | $ | 232,444.23 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ | 0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $ | 232,444.23 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $ | 6,872.77 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ | 239,317.00 |

**ANNUAL PERCENTAGE RATE** (Cost of your credit figured as a yearly rate): **6.400 %**

PAYMENT SCHEDULE BELOW, or ☐ See Schedule Attached

**LENDER    FIRST INSURANCE FUNDING CORP.**
450 Skokie Blvd, Suite 1000
P.O. Box 3306
Northbrook, IL 60065-3306
Telephone: (800) 837-3707
Fax: (800) 837-3709

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 10 | Beginning 04/29/2008 | 23,931.70 |

**Prepayment** The Insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the insured assigns FIRST INSURANCE FUNDING CORP, (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by FIRST within such grace period). This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, and ND.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRN:032608 CPG:Internal    RT:06249OPT1-NP CRD:0 BP:Bill P/F:0.00 SUB:FINCODEFAULT

## SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term In Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| TBD | 02126-001 - Continental Casualty Company 000141 - CRC - Cooney, Rikard & Curtin | PROP (ME%: 35.000 CX: 10) | 12 | 03-29-2008 FIN TXS/FEES ERN TXS/FEES | 49,087.00 0.00 2,500.00 |
| TBD | 03557-001 - Steadfast Insurance Company Chivaroli & Associates; Westlake Villa 004059-03557-001 | LIAB (ME%: 25.000 CX: 10) [AU] | 12 | 03-29-2008 FIN TXS/FEES ERN TXS/FEES | 195,130.00 9,658.93 0.00 |

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this agreement

**TOTAL PREMIUMS** (Record in "A"): **256,375.93**

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES:** The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, courts costs, and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses FIRST incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

Signature of Agent or Broker _____

Title _____ Date _____

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by FIRST, the named insured (herein referred to as "Insured") promised to pay to the order of FIRST, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.

**NOTICE TO THE INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

JAMES R CHEEK
(Name of Insured (Print or Type))
_signature_
President
Title _____ Date _____

FIF ST 0206

*Qwik-Loan Agent*

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT:

**WARRANTY OF ACCURACY.** The Insured represents and warrants to FIRST that the insurance policies listed in the Schedule of Policies are in full force and effect and that the Insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The Insured further represents and warrants to FIRST that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the Insured has no indebtedness to the insurers issuing the listed policies, and none of those insurers have asserted any claims for payment against the Insured.

**REPRESENTATION OF SOLVENCY.** The Insured represents that the Insured is not insolvent nor presently the subject of any insolvency proceeding.

**COLLATERAL.** To secure payment of all amounts due under this agreement, Insured grants FIRST a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagees or loss payee interest.

**RIGHT TO CANCEL.** If Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, FIRST may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to FIRST as security herein. This right, given by Insured to FIRST constitutes a "Power of Attorney". Before FIRST cancels the policies, FIRST will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to FIRST cannot be revoked, and that FIRST's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

**DEFAULT.** Insured is in default under this agreement if: (a) a payment is not received by FIRST when it is due, (b) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) Insured fails to comply with any of the terms of this agreement, (d) insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and Insured fails to pay such increased premium within thirty (30) days of notification, or (f) Insured is in default under any other agreement with FIRST. Whenever the word "default" is used in this agreement, it means any one of the above. If the Insured is in default, FIRST has no further obligation under this agreement to pay premiums on the Insured's behalf, and FIRST may pursue any of the remedies provided in this agreement.

**LATE CHARGES.** A late charge will be imposed on any payment which is not received by FIRST within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by FIRST within such grace period) This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, and NC.

**DISHONORED CHECK FEE.** If an Insured's check is dishonored for any reason and if permitted by law, the Insured will pay FIRST a dishonored check fee equal to the maximum fee permitted by law.

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** Once a Notice of Cancellation has been sent to any insurance company, FIRST has no duty to rescind it or to ask that the policy be reinstated, even if FIRST later receives Insured's payment. Payments which FIRST receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of FIRST's rights under this agreement.

**FIRST'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any policy is cancelled (whether by Insured or FIRST or anyone else) FIRST has the right to receive all unearned premiums and other funds assigned to FIRST as security herein and to apply them to Insured's unpaid balance under this agreement or any other agreement between the Insured and FIRST. If the amount received is more than the amount owed by Insured, any excess amount will be refunded to Insured. If the amount received is less than the amount owed by Insured, Insured will pay FIRST the balance due. FIRST may act in Insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever FIRST tells them regarding the policies; it does not have to get any proof from the Insured or anyone else.

**INTEREST DUE AFTER CANCELLATION.** To the extent permitted by applicable law, if cancellation occurs, the Insured agrees to pay FIRST interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** At any time after default, FIRST can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if FIRST has not received any refund of unearned premium.

**CANCELLATION CHARGE.** If a default by the Insured results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured will pay FIRST a charge equal to the maximum charge permitted by law.

**ASSIGNMENTS.** Insured may not assign any policy without FIRST's written consent. However, FIRST's consent is not needed to add mortgagees or other persons as loss payees. FIRST may transfer its rights under this agreement to anyone without the consent of Insured.

**COLLECTIONS AND ATTORNEY FEES.** FIRST may enforce its rights to collect amounts due to it without using the security interest granted in this agreement. If FIRST uses an attorney who is not a salaried employee of FIRST or incurs other collection costs to collect any money owed under this agreement, Insured agrees to pay reasonable attorney fees, court costs, and other collection costs incurred by FIRST, not to exceed 20 percent of the amount due and payable under this agreement.

**PREPAYMENT.** At any time, Insured may pay the entire amount still unpaid. If Insured pays the full unpaid amount before it is due, Insured will receive a refund of unearned Finance Charge computed by the actuarial method or the Rule of 78's, as permitted by applicable law. This refund will be subject to the maximum non-refundable service fee permitted by applicable law. There is no refund made if the amount to be refunded is less than $1.00.

**AUDIT AND REPORTING FORM POLICIES.** With regard to any policy in the Schedule of Policies, which is an auditable or reporting form type, Insured agrees to promptly pay to the insurance company the difference between the actual earned premium generated for the policy, and the premiums financed under this agreement.

**FINANCE CHARGE.** The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest and may include a non-refundable service fee equal to the maximum fee permitted by applicable law. The finance charge is computed using a 365 day year.

**AGENT OR BROKER.** The agent or broker handling this agreement is not the agent or broker of FIRST, and cannot legally bind FIRST in any way. Where permissible by law, some portion of this finance charge may be paid by FIRST to the agent or broker executing this agreement as payment for the services in rendering the financing of the insurance premiums. Any and all questions about this payment should be directed to the agent or broker.

**CORRECTIONS.** FIRST may insert the names of the insurance companies and policy numbers, if these are not known at the time Insured signs this agreement. FIRST is authorized to correct patent errors or omissions in this agreement.

**EFFECTIVE DATE.** This agreement will not become effective until it is accepted in writing by FIRST.

**GOVERNING LAW.** This agreement is governed by and interpreted under the laws of the state where FIRST accepts this agreement. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning. North Carolina Department of Insurance Forms IB-02.

**SIGNATURE AND ACKNOWLEDGMENT.** Insured has signed this agreement and received a copy of it. If Insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the Insured is not a corporation, all Insureds listed in any policy have signed.

**LIABILITY.** Insured understands and agrees that FIRST has no liability to Insured or any person or entity upon the exercise of FIRST's right of cancellation, except in the event of willful or intentional misconduct by FIRST.

---

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.** To the best of our knowledge, the Insured's signature is genuine.

**AUTHORIZATION/RECOGNITION.** The Insured has authorized this transaction. Both the Insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the Insured assigns to FIRST all unearned premium, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.

**POLICIES EFFECTIVE/PREMIUMS CORRECT.** The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed. **INSURED HAS THIS DOCUMENT.** The Insured has been given a copy of this agreement.

**NO INSOLVENCY.** To the best of our knowledge, neither the Insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right or as indicated on the Schedule of Policies.

(b) No policies are subject to Minimum Earned Premium except policies listed at right or as indicated on the Schedule of Policies. The Minimum Earned Premium for listed policies is $ _____

(c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right or as indicated on the Schedule of Policies.

(d) No policies contain provisions which prohibit cancellation either by the Insured or by the insurance company within ten (10) days, except those policies listed at right or as indicated on the Schedule of Policies.

FIF ST 0206

**DEPOSIT/PROVISIONAL PREMIUMS.** Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

**LOSS PAYEES NAMED.** Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (c). The Agent/Broker has notified the relevant insurance companies and the Insured that FIRST is to be named as a loss payee on any such policies.

**AUTHORIZED ISSUING AGENT.** For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of Issuing Agent or General Agent is listed in the Schedule of Policies.

**AMOUNTS DUE FROM INSURED.** The cash down payment and any installments due from the Insured have been collected from the Insured.

| Policy Number Of Exceptions | Comments |
|---|---|
| (a) | |
| (b) | |
| (c) | |
| (d) | |